IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| FAIRMONT SPECIALTY, a division of Crum & Forster Group, formerly known as FAIRMONT INSURANCE COMPANY, as handling agent for NORTH RIVER INSURANCE COMPANY,<br><br>          Plaintiff,<br><br>    vs.<br><br>The Estate of KARINA HOOHULI, Deceased; and TESSIE KOTRYS,<br><br>          Defendants.<br>_____ | CIVIL NO. 08-00450 JMS/LEK<br><br>ORDER (1) GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AS TO DEFENDANT TESSIE KOTRY'S CLAIM FOR LIABILITY INSURANCE COVERAGE; (2) GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AS TO DEFENDANTS' CLAIMS FOR UM/UIM AND PIP COVERAGE; AND (3) DENYING DEFENDANT ESTATE OF KARINA HOOHULI'S MOTION FOR SUMMARY JUDGMENT AS TO ALL CLAIMS |

**<u>ORDER (1) GRANTING  PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AS TO DEFENDANT TESSIE KOTRY'S CLAIM FOR LIABILITY INSURANCE COVERAGE; (2) GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AS TO DEFENDANTS' CLAIMS FOR UM/UIM AND PIP COVERAGE; AND (3) DENYING DEFENDANT ESTATE OF KARINA HOOHULI'S MOTION FOR SUMMARY JUDGMENT AS TO ALL CLAIMS</u>**

## I.  INTRODUCTION

In December 2007, Defendant Tessie Kotrys ("Kotrys") signed a contract with Prime Automotive Group, Inc. dba South Bay Auto ("South Bay Auto") to purchase a used 2005 Chevrolet 4D Sedan Malibu (the "Vehicle"), signed a credit contract to finance the purchase through a third party, and was

given possession of the Vehicle.  Before Kotrys' financing for the Vehicle was

approved, Kotrys crashed the Vehicle in a single-car accident, sustaining injuries

and killing her passenger, Karina Hoohuli ("Hoohuli").  Kotrys and the Estate of

Karina Hoohuli ("Estate of Hoohuli") (collectively, "Defendants"), assert that

South Bay Auto owned the Vehicle at the time of the accident such that the Vehicle

was insured by South Bay Auto's Garage Policy, provided by Plaintiff Fairmont

Specialty ("Plaintiff").

Currently before the court is Plaintiff's Motion for Summary

Judgment on Kotrys' claim for liability insurance coverage ("Pl.'s Mot. 1"),

Plaintiff's Motion for Summary Judgment on Defendants' claims for UM/UIM and

PIP coverage ("Pl.'s Mot. 2"), and the Estate of Hoohuli's Motion for Summary

Judgment on all claims ("Estate's Mot.").  Based on the following, the court

GRANTS Plaintiff's Motions for Summary Judgment and DENIES Defendants'

Motion for Summary Judgment as to all claims.

## II.  <u>BACKGROUND</u>

A.    **Factual Background**

   *1.    Kotrys and South Bay Auto's Agreement*

On December 5, 2007, Kotrys visited South Bay Auto after receiving

a promotional mailer that she was pre-approved for a car loan with Consumer

Portfolio Services, Inc. ("CPS").  *See* Hoohuli Ex. 1 at 24-25.  That day, Kotrys

entered into a sales agreement (the "Sales Agreement") with South Bay Auto to

purchase the Vehicle for $10,897.95.  Pl.'s Mot. 1 Exs. A ¶ 7, D, F.  Kotrys

provided a $500 down payment and signed a credit sale contract (the "Credit

Contract") to seek financing for the remaining amount through CPS.  Hoohuli Ex.

1 at 41-42; *see also* Pl.'s Mot. 1 Exs. A ¶ 8, H at 9-10.  In the event that CPS

declined to finance the Vehicle, the Sales Contract provides that:

> If I [Kotrys] apply for credit in purchasing the
> vehicle this statement will not be binding on you
> [South Bay Auto] until you approve my credit
> even if you sign the front side of this Agreement.
> If you do not approve my credit and I already have
> possession of the vehicle, I agree to return it to you
> within 24 hours after you notify me that my credit
> has not been approved.

Pl.'s Mot. Ex. E at "Credit Approval."[1]

The Sales Agreement lists CPS as the lienholder of the Vehicle and

---

[1]  The Credit Contract further provides that:

> After you sign this Contract, if for any reason we (the Seller) are
> unable to assign this Contract to one of the financial institutions
> with whom we regularly do business, this Contract will not be
> binding on you or us, except for this paragraph.  You agree to the
> following.  You will return the vehicle to us . . . . If you fail to
> return the vehicle within 24 hours of notice, you agree that we
> may, solely at our option, cancel the sale and retake immediate
> possession of the vehicle . . . .

Pl.'s Mot. 1 Ex. F at "Seller's Right to Cancel."

provides that "[t]itle to the vehicle will not pass to me [Kotrys] until you [South Bay Auto] have received full payment. . . ."  Pl.'s Mot. 1 Ex. D.  The Credit Contract further explains that Kotrys "will name us [South Bay Auto] as the legal owner on the title to the vehicle.  The registered owner will be the Buyer, the Other Owner, or both, as you [Kotrys] designate . . . ."  Pl.'s Mot. 1 Exs. F ¶ 3(e), G ¶ 3(e).

The Credit Contract required Kotrys to procure certain insurance for the Vehicle:

> Property insurance is required.  You may obtain such insurance for the vehicle from any insurance company you choose that is authorized to do business in the State of Hawaii and through any person you choose.
> You will insure the vehicle against the hazards and in the form and amount we specified in this Contract.  You will insure the vehicle for its actual cash value against fire, theft, and the risk listed in the comprehensive coverage and against collision or upset in the same amount less a maximum deductible of $500.00.  Each policy insuring the vehicle will be payable to both you and us.  You will furnish us satisfactory evidence of insurance.  Each policy you get will provide that the insurance company will give us at least ten (10) days' written notice before the policy is canceled.
> If you fail to obtain or provide proof of the insurance described above, or if you fail to pay any insurance premium we may, at our option, obtain insurance coverage at your expense for our interest only.  Insurance purchased by us will not cover

4

> your equity or your interest in the vehicle.  Any
> coverage we purchase will not include insurance
> on liability or bodily injury or property damages,
> and will not meet the requirement for proof of
> financial responsibility under Hawaii law.
> Insurance purchased by us will not cover your
> equity or your interest in the vehicle.

Pl.'s Mot. 1 Ex. F ¶ 3(f); *see also* Pl.'s Mot. 1 Ex. D (providing notice that

insurance is necessary to drive the vehicle in public).

In addition to the Sales Agreement and Credit Contract, Kotrys signed

an "Automobile Insurance Statement" recognizing her obligation to obtain certain

insurance and stating that she would extend her current policy with Allstate

Insurance Company ("Allstate") to cover the Vehicle.  Pl.'s Mot. 1 Ex. I.  Kotrys

received a temporary registration for the Vehicle, Pl.'s Mot. 1 Ex. H at 12, and left

South Bay Auto with the Vehicle that day.  Hoohuli Ex. 1 at 48.

On December 6, 2007, Kotrys obtained no-fault insurance for the

Vehicle with Allstate under her current policy, listing CPS as the lienholder, which

provided: automobile collision coverage in the amount of the actual cash value less

$500; automobile comprehensive coverage in the amount of the actual cash value

less $500; and liability coverages of $25,000 per person with an aggregate of

$50,000 per accident for bodily injury and $30,000 per accident for property

damage.  Pl.'s Mot. 1 Ex. J.  At the hearing, the parties agreed that Kotrys' Allstate

policy satisfies the minimum requirements for insurance coverage under Hawaii law.

CPS subsequently declined to finance the Vehicle until Kotrys paid deficiencies on a previous car loan.  Hoohuli Ex. 1 at 43.  On December 18, 2007, Kotrys and South Bay Auto entered into a second Sales Agreement and Credit Contract to include her previous loan and a service contract fee for a total of $15,522.77.  *See* Pl.'s Mot. 1 Exs. E, G.  Instead of CPS, Kotrys sought financing from Service Finance Company ("SFC"), which was listed as the lienholder on the Sales Agreement.  Pl.'s Mot. 1 Ex. E.  Except for the total price and financing through SFC, all terms in December 18 Sales Agreement and Credit Contract described above were identical.  On December 19, 2007, Allstate issued a new Certificate of Insurance listing SFC as the new lienholder.  *See* Pl.'s Mot. 1 Ex. K.

## 2. *The Accident*

On December 27, 2007, Kotrys was involved in a single-car accident (the "Accident") with the Vehicle on Paakea Road in Honolulu.  Compl. ¶ 7; Pl.'s Mot. 1 Ex. A ¶ 2.  Kotrys sustained injuries, and her passenger, Hoohuli, died as a result of the Accident.  Compl. ¶ 8; Pl.'s Mot. 1 Ex. B ¶ 4.

At the time of the Accident, Kotrys had not been granted or refused financing by SFC; instead South Bay Auto was in the process of working with SFC

6

to secure funding.  Hoohuli Ex. 1 at 62; Pl.'s Mot. 2 Ex. O at 66.

### 3.    *The Garage Policy*

During the relevant time period, South Bay Auto held the Garage

Policy under policy number 1367352288 from Plaintiff.  *See* Pl.'s Mot. 1 Ex. M.

The Garage Policy provides coverage for, among other things: liability coverage;

personal injury protection ("PIP") with a coverage limit of $10,000 per person per

accident; and non-stacked uninsured motorists ("UM") and underinsured motorists

("UIM"), both with coverage limits of  $100,000 per person and $300,000

aggregate.

#### a.    *Liability coverage*

Under "Liability Coverage," the Garage Policy provides:

> We will pay all sums an "insured" legally must pay
> as damages because of "bodily injury" or
> "property damage" to which this insurance applies,
> caused by an "accident" and resulting from
> "garage operations" involving the ownership,
> maintenance, or use of covered "autos".
> . . .
> We have the right and duty to defend any
> "insured" against a "suit" asking for such damages
> or a "covered pollution cost or expense".
> However, we have no duty to defend any "insured"
> against a "suit" seeking damages for "bodily
> injury" or "property damage" or a "covered
> pollution cost or expense" to which this insurance
> does not apply . . . .

7

Hoohuli Ex. 9 at CA 00 05 10 01, § II ¶ A (2).

An "insured," as used in this section, is defined as:

> 3.   Who Is An Insured
>   a.   The following are "insureds" for
>         covered "autos"
>         (1)   You for any covered "auto".
>         (2)   Anyone else while using with
>               your permission a covered
>               "auto" you own, hire, or
>               borrow . . . .

*Id.* § II ¶ 3.[2]

   b.   *Uninsured/Underinsured Coverage*

With respect to both uninsured and underinsured coverage, the Garage

Policy states that it will pay "all sums the 'insured' is legally entitled to recover as

---

[2]  The Garage Policy further describes an insured as:
>   d.  Your customers if your business is shown in the Declarations as
>   a "auto" dealership.  However, if a customer of yours:
>         (i) has no other available insurance (whether primary,
>         excess or contingent), they are an "insured" but only up to
>         the compulsory or financial responsibility law limits where
>         the covered "auto" is principally garaged.
>         (ii) Has other available insurance (whether primary, excess
>         or contingent) less than the compulsory or financial
>         responsibility law limits where the covered "auto" is
>         principally garaged, they are an "insured" only for the
>         amount by which the compulsory or financial responsibility
>         lay limits exceed the limit of their other insurance.

The parties dispute whether, in the event that the court determines that South Bay Auto owned
the Vehicle at the time of the Accident, Kotrys qualifies as a "customer."  Because, as discussed
below, the court finds that Kotrys owned the Vehicle at the time of the Accident, the court does
not reach this argument.

damages from the owner or driver" of the uninsured/underinsured vehicle so long as "[t]he owner's or driver's liability . . . result[s] from the ownership, maintenance or use" of the uninsured/underinsured vehicle.  *Id.* at CA 21 84 10 01 ¶ A (1), CA 21 85 10 01 ¶ A (1).  An "insured," as used in this section, is defined as "[a]nyone 'occupying' a covered 'auto' or a temporary substitute for a covered 'auto'" or "[a]nyone for damages he or she is entitled to recover because of 'bodily injury' sustained by another 'insured.'"  *Id.* at CA 21 84 10 01 ¶ B (2)(a)-(b), CA 21 85 10 01 ¶ B (2)(a)-(b).  The Garage Policy's UM/UIM provision defines an "insured" as "[a]nyone 'occupying' a covered 'auto,'" *id.* ¶ A(2)(a), where a "covered auto" is defined as a vehicle that South Bay Auto owns.  *See id.* at CA 00 05 10 01 § I ¶ A (explaining that  "covered autos" for UM/UIM coverage are designated with a symbol of "22" in the Garage Policy, where the "22" symbol is described as "[o]nly those autos [South Bay Auto] own[s].")

  c. *PIP coverage*

    The Garage Policy states that it will provide "personal injury protection benefits for medical expenses incurred with respect to 'bodily injury' sustained by an 'insured' and caused by an 'auto accident' arising out of the operation, maintenance or use of a covered 'auto.'"  *Id.* at CA 22 65 10 04 ¶ A.

    An "insured," as used in this section, includes "[a]nyone else injured

in an "auto accident while 'occupying' or when struck as a 'pedestrian' by 'your covered auto' or a temporary loaner vehicle." *Id*. at CA 22 65 10 04 ¶ E 4(b). A "covered auto" is defined as "only those autos [South Bay Auto] own[s]." *Id.* at CA 00 05 1001 § I ¶ A. Vehicles that are "covered autos" include: (1) vehicles "[f]or which you are required to maintain security under the Hawaii Motor Vehicle Insurance Law"; and (2) vehicles "[t]o which "bodily injury" liability covered under this policy applies." Hoohuli Ex. 9 at CA 22 65 10 04 ¶ E 10 (a)-(b).

**B.     Procedural Background**

On October 9, 2009, Plaintiff filed a Complaint seeking a declaratory judgment that (1) UM/UIM coverages under the Garage Policy are not applicable because the Vehicle is not a "covered auto;" (2) UM/UIM coverages under the Garage Policy are not applicable because neither Hoohuli nor Kotrys is an "insured;" (3) the PIP coverage under the Garage Policy is not applicable because the Vehicle was not a "covered auto;" (4) the PIP coverage under the Garage Policy is not applicable because neither Hoohuli nor Kotrys is an "insured;" (5) liability coverage under the Garage Policy is not applicable because Kotrys is not an "insured;" (6) liability coverage under the Garage Policy is not applicable because Kotrys was a South Bay Auto customer; and (7) the Garage Policy affords no benefits to either Defendant.

10

On June 3, 2009, Plaintiff filed a Motion for Summary Judgment as to Kotrys' claim for liability insurance coverage and a Motion for Summary Judgment as to Defendant's claims for UM/UIM and PIP coverage, and the Estate of Hoohuli filed a Motion for Summary Judgment on all claims.  On June 12, 2009, Kotrys filed a Motion for Joinder on the Estate of Hoohuli's Motion as to all claims.[3]  On June 26, 2009, the Estate of Hoohuli filed an Opposition, and Plaintiff filed a Memorandum in Opposition to the Estate of Hoohuli's Motion for Summary Judgment.  Kotrys and the Estate of Hoohuli filed their replies on July 1, 2009 and July 2, 2009, respectively.  A hearing was held July 15, 2009.

## III.  STANDARD OF REVIEW

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Rule 56(c) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999).

---

[3] The Estate of Hoohuli explicitly disclaimed PIP coverage in its Opposition.  At the hearing, however, Kotrys clarified that she continues to seek PIP coverage.

"A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 323); *see also Jespersen v. Harrah's Operating Co.*, 392 F.3d 1076, 1079 (9th Cir. 2004). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts [and] come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586-87 (1986) (citation and internal quotation signals omitted); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986) (stating that a party cannot "rest upon the mere allegations or denials of his pleading" in opposing summary judgment).

"An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law." *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) (citing *Anderson*, 477 U.S. at 248). When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences on behalf of the nonmoving party.

12

*Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *see also Posey v. Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121, 1126 (9th Cir. 2008) (stating that "the evidence of [the nonmovant] is to be believed, and all justifiable inferences are to be drawn in his favor." (citations omitted)).

## IV. <u>DISCUSSION</u>

The Estate of Hoohuli seeks coverage under the Garage Policy's liability and UIM/UM provisions, and Kotrys seeks coverage under the liability, PIP and UIM/UM provisions. For Defendants to recover under any of these provisions, the parties agree that South Bay Auto must have "owned" the Vehicle at the time of the Accident. Based on the following, the court finds that South Bay Auto did not own the Vehicle such that Defendants are not entitled to coverage under the Garage Policy.

### A.   **Framework for Construing Insurance Contracts**

Under Hawaii law, courts must look to the language of the insurance policy to determine the scope of the insurer's duties. *See Sentinel Ins. Co. v. First Ins. Co. of Haw.*, 76 Haw. 277, 287, 875 P.2d 894, 904 (1994); *see also Hawaiian Ins. & Guar. Co. ("HIG") v. Fin. Sec. Ins. Co. ("FSIC")*, 72 Haw. 80, 87, 807 P.2d 1256, 1260 (1991) ("In the context of insurance coverage disputes, we must look to the language of the insurance policies themselves to ascertain whether

coverage exists, consistent with the insurer and insured's intent and

expectations.").  The Hawaii Supreme Court has offered the following rules for

interpreting provisions of insurance policies:

> [I]nsurance policies are subject to the general rules of contract
> construction; the terms of the policy should be interpreted
> according to their plain, ordinary, and accepted sense in
> common speech unless it appears from the policy that a
> different meaning is intended.  Moreover, every insurance
> contract shall be construed according to the entirety of its terms
> and conditions as set forth in the policy.
> Nevertheless, adherence to the plain language and literal
> meaning of the insurance contract provisions is not without
> limitation.  We have acknowledged that because insurance
> policies are contracts of adhesion and are premised on standard
> forms prepared by the insurer's attorneys, we have long
> subscribed to the principle that they must be construed liberally
> in favor of the insured and any ambiguities must be resolved
> against the insurer.  Put another way, the rule is that policies are
> to be construed in accord with the reasonable expectations of a
> layperson.

*Guajardo v. AIG Haw. Ins. Co.*, 118 Haw. 196, 202, 187 P.3d 580, 586 (2008)

(citing *Dairy Rd. Partners v. Island Ins. Co.*, 92 Haw. 398, 411-12, 992 P.2d 93,

106-07 (2000) (internal citations, quotation marks, brackets, and ellipses omitted));

*HIG*, 72 Haw. at 87-88, 807 P.2d at 1260 ("[W]e shall construe insurance policies

according to their plain, ordinary, and accepted sense in common speech unless it

appears that a different meaning was intended.  Moreover, this court has stated that

it is committed to enforce 'the objectively reasonable expectations' of parties

14

claiming coverage under insurance contracts which are 'construed in accord with

the reasonable expectations of a layperson.'" (citations omitted)); *see also*

*Burlington Ins. Co. v. Oceanic Design & Constr.*, *Inc.*, 383 F.3d 940, 945 (9th Cir.

2004) ("In Hawaii, the terms of an insurance policy are to be interpreted according

to their plain, ordinary, and accepted sense in common speech.").

**B.    Application of Framework**

**1.    *The Garage Policy Requires that South Bay Auto "Own" the Vehicle***

The parties agree that all of the Garage Policy provisions at issue --

liability, UM/UIM, and PIP -- require that South Bay Auto "own" the Vehicle at

the time of the Accident for coverage to attach.

Specifically, the Garage Policy states that liability coverage extends

only to an "insured."  Pl.'s Mot. 1 Ex. M at CA 00 05 10 01 § II ¶ A(1)(a).  The

Garage Policy's liability coverage policy defines an "insured" as: (1) the

policyholder (South Bay Auto); and (2) "[a]nyone else while using with your

permission a covered 'auto' you [South Bay Auto] *own*, hire, or borrow." *Id.* at     ¶

A(3)(a)(1)-(2) (emphasis added).

The Garage Policy's UM/UIM provision similarly applies only to an

"insured."  *Id.* at CA 21 84 10 01 ¶ A(1), CA 21 85 10 01 ¶ A(1).  As explained

above, the Garage Policy's UM/UIM provision defines an "insured" as "[a]nyone

15

'occupying' a covered 'auto,'" *id*. ¶ A(2)(a), where a "covered auto" is defined as a

vehicle that South Bay Auto owns.  *See id.* at CA 00 05 10 01 § I ¶ A (explaining

that  "covered autos" for UM/UIM coverage are designated with a symbol of "22"

in the Garage Policy, where the "22" symbol is described as "[o]nly those autos

[South Bay Auto] own[s].")

       Finally, the Garage Policy's PIP provision, which is presented as an

addendum to the Garage Policy, applies only to an "insured" experiencing an

accident involving a "covered auto[]."  *Id.* at CA 22 65 10 04 ¶ A.  The Garage

Policy's PIP provision defines an "insured" as South Bay Auto or "[a]nyone else

injured in an 'auto accident' while 'occupying' . . . 'your covered auto' . . . ."  *Id.*

at CA 22 65 10 04 ¶ E(4)(a)-(b).  A "covered auto" is defined as (1) an auto "[f]or

which you are required to maintain security under the Hawaii Motor Vehicle

Insurance Law"; or (2) an auto "[t]o which 'bodily injury' liability coverage under

this policy applies."  *Id.* at CA 22 65 10 04 ¶ E (10)(a).  An additional definition of

"covered autos" under the Garage Policy's PIP coverage can be found in Plaintiff's

Motion 1 Ex. M at CA 00 05 10 01 Section I ¶ A (explaining that "covered autos"

for UM/UIM coverage are designated with a symbol of "22" in the Garage Policy,

where the "22" symbol is described as "[o]nly those autos [South Bay Auto]

own[s].").  Both definitions of "owned auto" for PIP coverage require vehicle

ownership.  With regard to the first category, the Hawaii Motor Vehicle Insurance Law requires "[e]very *owner* of a motor vehicle . . . shall obtain a motor vehicle insurance policy . . . ."  Hawaii Revised Statutes ("HRS") § 431:10C-102(b) (emphasis added).  With regard to the second category, the foregoing analysis of the Garage Policy's liability provision applies.

In sum, because each of the provisions at issue require South Bay Auto to "own" the Vehicle at the time of the Accident for coverage to attach, Kotrys and the Estate of Hoohuli are covered by the Garage Policy if, and only if, South Bay Auto owned the Vehicle at that time.

### 2.    *Ownership of the Vehicle*

The Garage Policy does not define what it means to "own" an auto. *HIG v. FSIC*, 72 Haw. 80, 807 P.2d 1256 (1991), however, provides useful guidance for construing vehicular ownership in the context of insurance disputes.

In *HIG*, an automobile dealership ("Seller") executed a contract to sell a vehicle to a buyer ("Buyer").  At the time of the transaction, the vehicle's Certificate of Ownership identified the Seller as the "registered owner" and First Hawaiian Bank ("FHB") as the "Legal Owner or Lien Holder."  After signing the contract, the Buyer: (1) made a $1,000 down payment, paying $880 in cash and $120 via a promissory note; (2) obtained financing through Central Pacific Bank

17

("CPB"); (3) acquired auto insurance for the vehicle from FSIC; and (4) was given possession of the vehicle. *See id.* at 83, 807 P.2d at 1258.

The Buyer was subsequently involved in a car accident resulting in the death of another driver (the "Deceased"). At the time of the accident, the Buyer was one day late in paying the $120 due on the promissory note. Further, "the vehicle's Certificate of Ownership still identified [the Seller] as the 'registered owner' and FHB as the 'Legal Owner or Lien Holder' because [the Seller] had not yet processed the documents reflecting the transfer of ownership from [Seller] and FHB to the [Buyer] and CPB." *Id.* A lawsuit followed, presenting the Hawaii Supreme Court with the issue of whether the vehicle was covered by the Seller's insurance policy with HIG.

The Hawaii Supreme Court affirmed that HIG was not liable for claims arising from the accident because the Buyer -- and not the Seller -- owned the vehicle, despite the Buyer's delinquent promissory note and the fact that the Certificate of Ownership remained in the Seller's name. *Id.* In determining that the buyer owned the vehicle for insurance purposes, the Hawaii Supreme Court analyzed: (1) the plain meaning of the word "owner;" (2) the objectively reasonable expectations of the parties; and (3) the importance of avoiding an absurd outcome.

18

First, the Court found that the Buyer owned the vehicle because the

Buyer entered into a valid sales agreement and took possession and control of the

vehicle.  *Id*. at 88, 807 P.2d at 1260.  Next, the Court surmised that when the Buyer

insured the vehicle, an act "consistent with the notice set forth in the retail

installment contract," *id*. at 87, 807 P.2d at 1260, that "ownership, in an insurance

context, was transferred to the [Buyer], consistent with the intent and expectations

of the parties." *Id*. at 87, 807 P.2d at 1259.  Third, the Court held that finding that

the Seller was the owner would be an "absurd result . . . outside the realm of the

[Buyer's] objectively reasonable expectations, and more so of the [Sellers],"

because the language in both the insurance provisions and the contract

provisions -- coupled with the fact that the Buyer enjoyed exclusive control and

possession of the vehicle -- established the Buyer as the owner in keeping with the

Buyer and the Seller's objectively reasonable expectations.  *Id*. at 88-89, 807 P.2d

at 1260.

Applying these principles, the court determines that Kotrys and not

South Bay Auto was the owner of the Vehicle for insurance purposes.  First, the

word "owner," as it is commonly used and understood, best applies to Kotrys and

not South Bay Auto.  As *HIG* notes, "the word 'owner' when considered in its

plain, ordinary and accepted sense in common speech would include a buyer who

enters into a valid sales agreement and takes possession and control of the subject vehicle." *Id.* at 88, 807 P.2d at 1260 (citing *Pac. Ins. Co. v. Or. Auto. Ins. Co.*, 53 Haw. 208, 490 P.2d 899 (1971)).  In the instant case, Kotrys was a buyer who entered into a valid sales agreement.  Pl.'s Mot. 1 Exs. D, E.  Kotrys and South Bay Auto signed the Sales Agreement in order to "cover[] my [Kotrys] purchase from you [South Bay] of the motor vehicle . . . ."  Pl.'s Mot. 1 Ex. D.  This agreement was a binding contract selling the Vehicle to Kotrys -- Kotrys agreed that she "may cancel this Agreement *only* if [she] refuse[s] to accept either a change in price of new vehicle or the reappraised value of a trade-in vehicle."  *See id.* at "Failure to Complete Purchase" (emphasis added).  Consistent with the Sales Agreement, Kotrys took full possession and control of the Vehicle that same day.  *See* Pl.'s Mot. 1 Ex. H at 20:11-18.  Accordingly, under a plain meaning perspective, Kotrys owned the Vehicle.  *See HIG*, 72 Haw. at 88, 807 P.2d at 1260.

Second, the objectively reasonable expectations of Kotrys and South Bay Auto, "construed in accord with the reasonable expectations of a layperson," *see id.*, also support the conclusion that Kotrys is the owner of the Vehicle because both Kotrys and South Bay Auto expected Kotrys to obtain liability coverage for the Vehicle.  *See* Pl.'s Mot. 1 Ex. J.

The Hawaii "No Fault Law" addresses the insurance obligations of

individuals operating motor vehicles and requires every "*owner*" of a motor

vehicle to maintain an insurance policy.  *See* HRS § 431:10C (emphasis added).

The Sales Agreement provides Kotrys with notice that a Hawaii motor vehicle

insurance policy is required at all times while operating the Vehicle.  *See* Pl.'s Mot.

1 Ex. D at "Notice to the Buyer."  Further, the Credit Contract clearly assumes that

Kotrys, and not South Bay Auto, was responsible for liability coverage for the

Vehicle -- that is, it makes clear that Kotrys was required to purchase property

insurance, and that if she failed to do so South Bay Auto would buy the property

insurance but not any liability coverage.  *See* Pl.'s Mot. 1 Ex. F   ¶ 3(f).  The Credit

Contract additionally requires "physical damage insurance," *see* Pl.'s Mot. 1 Ex. F,

which is distinct from and in addition to the Hawaii motor vehicle insurance

requirements.  *See id.*

       Consistent with her obligations under the Sales Agreement, the Credit

Contract, and Hawaii's "No Fault Law," Kotrys signed an "Automobile Insurance

Statement" affirming to South Bay Auto that Kotrys' insurance would "cover" the

Vehicle for "Fire and Theft, Comprehensive, [and] Deductible Collision."  Pl.'s

Mot. 1 Ex. I.  Also consistent with these objectively reasonable expectations,

Kotrys subsequently obtained liability, UM/UIM, and PIP coverage for the

Vehicle.[4]  *See* Pl.'s Mot. 1 Ex. J.

Finally, a determination that South Bay Auto owned the Vehicle would be absurd under these facts.  *See HIG*, 72 Haw. at 85, 807 P.2d at 1259 (finding that a court should not "produce an unreasonable and absurd result" via its analysis).  To find South Bay Auto was the owner of the Vehicle would mean that the Vehicle was insured by both Kotrys and South Bay Auto.  There is no evidence in the record that either party anticipated that the Garage Policy insurance for the Vehicle was to be stacked with Kotrys' insurance policy, and indeed, Hawaii's "No Fault Law" requires that a motor vehicle is insured "at all times under a no-fault policy," *id.* at 89, 807 P.2d at 1261 (citing HRS § 294-8(a)(1) (Supp. 1984)), in order to "guarantee continued insurance coverage on any vehicle being sold . . . ." *Id.* at 92, 807 P.2d at 1262.  Both the statute and the evidence in the record therefore suggest that when a buyer acquires vehicle insurance it supplants, and not supplements, the seller's insurance policy.[5]  The court therefore concludes that

---

[4] Further, both Kotrys and South Bay Auto took additional steps that indicate that the objectively reasonable expectations of the parties were that Kotrys, not South Bay Auto, owned the Vehicle.  Upon completing the Sales Contract, South Bay Auto provided Kotrys with a Temporary Registration.  Pl.'s Mot. 1 Ex. L at 427.  The Temporary Registration certifies that Kotrys "purchased the . . . vehicle."  *Id.*  According to South Bay Auto, the Temporary Registration was provided "[b]ecause the car is not to her name . . . [so if] the police officer stop [sic], they know that she just bought the car[]."  *Id.*

[5] Further, the objective of Hawaii's No-Fault Law is to "reduce the cost of motor vehicle insurance by establishing a uniform system of motor vehicle insurance."  *See Hawaiian Ins.*

(continued...)

Kotrys owned the Vehicle at the time of the Accident.

In opposition, Kotrys and the Estate of Hoohuli argue that South Bay Auto, and not Kotrys, was the owner of the Vehicle because Kotrys was unsuccessful in securing financing for the Vehicle and because the title to the Vehicle had not been transferred to Kotrys.  The Estate of Hoohuli argues that this action is distinguishable from *HIG* because the buyer in *HIG* was successful at securing financing, and because South Bay Auto never intended to transfer title to Kotrys until the Vehicle was fully paid.  *See* Pl.'s Mot. 1 Ex. D at "Title to Vehicle."

Regarding Defendants' financing argument, the Sales Contract expressly anticipates the possibility that a buyer's credit may not be approved.  *See* Pl.'s Mot. 1 Ex. D at "Credit Approval."  In the event that Kotrys' credit is not approved, the Sales Contract provides that the agreement will not be binding upon the Seller, and that the Buyer must return the Vehicle within 24 hours after being notified of the credit deficiency by the Seller.  *Id*.  The Credit Contract makes clear, however, that a sale is canceled only if the Seller decides to take the

---

[5](...continued)
*Guar. Co. v. Fin. Sec. Ins. Co.*, 72 Haw. 80,  91, 807 P.2d 1256, 1261 (1991) (internal citations omitted).  If South Bay Auto were the owner of the Vehicle, this would increase the cost of motor vehicle insurance by requiring automobile dealerships to purchase more extensive coverage than was previously necessary.  *Id*.

affirmative step of cancelling the sale; the mere fact that financing fails does not, in and of itself, mean that the parties never had an agreement.  Pl.'s Mot. 1 Ex. F at "Seller's Right to Cancel."  South Bay Auto never exercised its option to cancel the sale and retake possession of the vehicle, *see* Pl.'s Mot. 1 Ex. N at 7-9, and the fact that South Bay Auto could have repossessed the Vehicle does not imply that South Bay Auto was the owner.  *See HIG*, 72 Haw. at 92, 807 P.2d at 1262 (finding that the buyer was the owner despite the seller's right to possession due to a delinquent promissory note).[6]

The court also rejects Defendants' argument that South Bay Auto was the owner of the Vehicle because South Bay Auto retained its title.  *HIG* makes clear that title to the vehicle is not dispositive vis-a-vis ownership for insurance purposes.  *See id.* at 80, 807 P.2d at 1256.  While the reason that title to the vehicle in *HIG* was not transferred is different from the case at bar, *HIG*'s teaching of the relevant principles to consider when evaluating ownership in the context of an insurance dispute still applies, and, as discussed above, show that Kotrys owned

---

[6]  At oral argument, counsel for Kotrys argued that the Sales Agreement was never binding because of the first sentence in the "Credit Approval" clause, which states: "If I apply for credit in purchasing the vehicle, this Agreement will not be binding on you until you approve my credit even if you sign the front side of this Agreement."  Pl.'s Mot. 1 Ex. D at "Credit Approval."  The second sentence of the "Credit Approval" clause, however, establishes that the clause requires the prospective buyer's credit to first be rejected ("If you do not approve my credit . . . .").  *Id.*  Because Kotrys' credit had not been denied at the time of the Accident, the court rejects the argument that the parties did not enter into a binding contract.

the Vehicle at the time of the accident.  Because Kotrys owned the Vehicle, neither Kotrys nor the Estate of Hoohuli is entitled to coverage under the Garage Policy.

## V.  CONCLUSION

Based on the above, the court GRANTS Plaintiff's Motion for Summary Judgment as to Defendants' claims for UM/UIM and PIP coverage; GRANTS Plaintiff's Motion for Summary Judgment as to Defendant Tessie Kotrys' claim for liability insurance coverage; and DENIES Defendant Estate of Hoohuli's Motion for Summary Judgment as to all claims.  Because no claims remain, the Clerk of Court is ordered to close the case.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, July 28, 2009.



_/s/ J. Michael Seabright_____
J. Michael Seabright
United States District Judge

*Fairmont Speciality v. The Estate of Karina Hoohuli & Tessie Kotrys*, Civ. No. 08-00450 JMS/LEK, Order (1) Granting Plaintiff's Motion for Summary Judgment as to Defendant Tessie Kotry's Claim for Liability Insurance Coverage; (2) Granting Plaintiff's Motion for Summary Judgment as to Defendants' Claims for UM/UIM and PIP Coverage; and (3) Denying Defendant Estate of Karina Hoohuli's Motion for Summary Judgment as to All Claims